**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: ) | Chapter 7 |
| ) | |
| EVERGREEN INTERNATIONAL ) | |
| AVIATION, INC., et al., ) | Case No. 13-13364 (MFW) |
| ) | |
| Debtors. ) | |
| _____ ) | (Jointly Administered) |
| ) | |
| ALFRED T. GIULIANO, Chapter 7 ) | |
| Trustee for Evergreen ) | |
| International Aviation, Inc., ) | |
| et al., ) | |
| ) | |
| Plaintiff, ) | Adv. No. 15-51918 (MFW) |
| ) | |
| v. ) | |
| ) | |
| WORLD FUEL SERVICES, INC., ) | |
| and EVERGREEN HOLDINGS, INC., ) | |
| ) | |
| Defendants. ) | |
| _____ | |

**OPINION**[1]

Before the Court are cross motions for summary judgment. Plaintiff Alfred T. Giuliano (the "Trustee"), the chapter 7 trustee of the estates of Evergreen International Aviation, Inc. ("Aviation") and its affiliated debtors (collectively, the "Debtors"), seeks to recover two transfers as fraudulent conveyances. Defendant World Fuel Services, Inc. ("World Fuel") contends that the Debtors received reasonably equivalent value

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

for both transfers.  For the reasons set forth below, the Court finds that (i) issues of material fact exist with respect to the Joinder Guarantee, but that (ii) Aviation received reasonably equivalent value for the transfer of $5.2 million.  Accordingly, the Trustee's motion for summary judgment will be denied, and World Fuel's motion for summary judgment will be granted in part.

I.   JURISDICTION

The Court has jurisdiction over this core adversary proceeding.  28 U.S.C. §§ 157(b) & 1334.  The parties are deemed to have consented to the Court entering a final order. See Del. Bankr. L. R. 7008-1.[2]  <u>Wellness International Network v. Sharif</u>, 135 S. Ct. 1932 (2015) (finding that parties' consent permits a bankruptcy judge to enter a final order or judgment on a claim).

II.  BACKGROUND

Aviation is the parent corporation of the other Debtors.  Until 2014, Aviation also owned all of the outstanding stock in Evergreen Helicopters, Inc. ("Helicopters").  Aviation and its

---

[2] Local Rule 7008-1 requires parties in an adversary proceeding to include "a statement that the pleader does or does not consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. If no such statement is included, the pleader shall have waived the right to contest the authority of the Court to enter final orders or judgments."

subsidiaries were in the business of providing air cargo transportation and aviation support.

For over a decade before the petition date, World Fuel sold fuel to Aviation and its subsidiaries. Debtor Evergreen International Airlines, Inc. ("Airlines") was the primary purchaser from World Fuel. (Smith Dep. at 20:9-20.) Airlines became delinquent in paying its indebtedness to World Fuel. As a result, World Fuel required Airlines and Helicopters to enter into a Repayment Agreement in March 2012 as a condition to providing further fuel. (Mellone Dep. at 23:7-24:17.) The Repayment Agreement acknowledged a past due balance of $2,349,185.34. (Caine Decl. Ex. 7, ¶ 1.) Subsequently, on May 4, 2012, several Debtor and non-debtor entities, not including Aviation, entered into a Continuing Guaranty which guaranteed the indebtedness of Airlines and Helicopters to World Fuel. (Caine Decl. Ex. 8.) On May 10, 2012, Aviation signed a Joinder to the Continuing Guarantee (the "Joinder Guarantee"). (Caine Decl. Ex. 9.)

On July 20, 2012, two non-debtor affiliates of Aviation, Holdings and Vintage, entered into a Blanket Payment and Performance Guaranty (the "Blanket Agreement") in favor of World Fuel. (Caine Decl. Ex. 10.) The Blanket Agreement stipulated that (i) Airlines' outstanding balance of approximately $6.9 million was in default, and (ii) in exchange for World Fuel's

forbearance on collecting that debt, Vintage and Holdings granted World Fuel a security interest in collateral valued at $6 million, including an aircraft with an appraised value of $4.2 million.  (Id.; Aircraft Chattel Mortgage and Security Agreement, Edelson Dec. Ex. G.; Aircraft Appraisal Reports, Edelson Dec. Ex. F.)

In 2013, Aviation entered into an agreement to sell the stock of Helicopters for $190 million.  At that time, Aviation had a lease with General Electric ("GE") for a corporate jet, which Aviation subleased to Helicopters.  (Smith Dep. at 80:16-81:20.)  GE demanded additional security on the lease before consenting to the Helicopters sale.  (Id. at 80:16-23.)  The proposed security was the aircraft from the collateral package already pledged to World Fuel.  (Id.)  Consequently, on April 29, 2013, debtors Aviation and Airlines and non-debtors Holdings and Vintage entered into a Paydown and Release Agreement with World Fuel.  (Caine Decl. Ex. 11.)  This agreement stipulated that (i) Airlines' outstanding balance was $9,774,031 and (ii) Aviation would pay $5.2 million in exchange for the release of World Fuel's security interest in the aircraft.  (Id. at ¶ A.)

On May 2, 2013, Aviation completed the Helicopters stock sale for approximately $190 million.  (Smith Dep. at 99:6-9.)  As part of that sale, the purchaser paid World Fuel $5.2 million, and World Fuel released its interest in the aircraft.  (Id. at 89:12-18; Mellone Dep. at 49:3-4.)

4

On December 31, 2013, the Debtors filed for relief under chapter 7 of the Bankruptcy Code. On March 31, 2014, World Fuel filed a Proof of Claim against Airlines asserting a general unsecured, non-priority claim in the amount of $9,048,284.65. (Claim No. 134.) On December 11, 2015, the Trustee filed an adversary proceeding against World Fuel and non-Debtor affiliate Evergreen Holding, Inc. The Trustee's complaint includes eleven claims for relief including, <u>inter</u> <u>alia</u>, (i) avoidance of Aviation's entry into the Joinder Guaranty in favor of World Fuel and (ii) avoidance and recovery of the $5.2 million payment to World Fuel from the Helicopters sale proceeds.

Because the only dispute in the parties' cross motions is whether Aviation received reasonably equivalent value for each of the two transfers, the parties request that the Court rule as a matter of law.

III. <u>DISCUSSION</u>

A. <u>Rule 56 Standard of Review</u>

Rule 7056 of the Federal Rules of Bankruptcy Procedure incorporates Rule 56(c) of the Federal Rules of Civil Procedure which sets forth the applicable summary judgment standard. F. R. Bankr. P. 7056; Fed. R. Civ. P. 56(c). Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). See also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (holding that the party moving for summary judgment has the initial burden of demonstrating the absence of a dispute of material fact). Admissions in pleadings, affidavits, discovery, and disclosure materials on file, including all factual inferences derived therefrom, are viewed in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

Once a movant presents sufficient proof in support of the motion, the burden shifts to the nonmoving party to show that "genuine issues of material fact still exist and that summary judgment is not appropriate." Miller v. JNJ Logistics, LLC (In re Proliance Int'l, Inc.), 514 B.R. 426, 429 (Bankr. D. Del. 2014). Mere allegations are not enough to establish a genuine issue of material fact. Id. There must be sufficient evidence upon which a reasonable trier of fact could return a verdict in favor of the nonmoving party. Miller v. Westfield Steel, Inc. (In re Elrod Holdings Corp.), 426 B.R. 106, 109 (Bankr. D. Del. 2010). See also Anderson, 477 U.S. at 248-51 (explaining that a factual dispute occurs when reasonable minds could disagree on the result).

    B.    <u>Avoidance of Fraudulent Transfers</u>

Section 548(a) of the Bankruptcy Code permits a trustee to

avoid either a transfer of the Debtor's property or an obligation incurred by the Debtor if (1) it occurred within two years of the petition date, (2) the debtor was insolvent at the time of the transfer or became insolvent as a result of it, and (3) the debtor received less than reasonably equivalent value in exchange for the property or obligation.  11 U.S.C. § 548.  That section defines value as "property, or satisfaction or securing present or antecedent debt of the debtor . . . ."  Id. §  548(d)(2).

The Third Circuit applies a two-step approach to determine whether a debtor received reasonably equivalent value in exchange for a transfer or obligation.  Pension Transfer Corp. v. Beneficiaries under the Third Amend. to Fruehauf Trailer Corp. Ret. Plan No. 003 (In re Fruehauf Trailer Corp.), 444 F.3d 203, 212 (3d Cir. 2006); Indus. Enters. of Am. v. Tabor Academy (In re Pitt Penn Holding Co., Inc.), Adv. No. 11-51879, 2011 WL 4352373, at *9 (Bankr. D. Del. Sept. 16, 2011).  First, "a court must consider whether, 'based on the circumstances that existed at the time' of the transfer, it was 'legitimate and reasonable' to expect some value accruing to the debtor."  Id.  (quoting Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.), 92 F.3d 139, 152 (3d Cir. 1996)).  Second, if the court finds that the debtor received any value, then it must engage in a fact-driven comparison between that value and the transfer sought to be avoided to determine "whether

7

the debtor got roughly the value it gave." Id. at 212-13. When determining value, courts must engage in a fact-driven analysis of the totality of the circumstances including the good faith of the parties, the difference between the amount paid and the market value, and whether the transaction was at arm's length. VFB LLC v. Campbell Soup Co., 482 F.3d 624, 631 (3d Cir. 2007); In re Evergreen Energy, Inc., 546 B.R. 549, 563 (Bankr. D. Del. 2016).

    1.    The Joinder Guaranty

The Continuing Guaranty provided a guaranty for all indebtedness to World Fuel of debtors Airlines, Evergreen Aviation Ground Logistics, Evergreen Trade, and non-debtors Evergreen Agricultural Enterprises and Helicopters, as well as "any other corporation, partnership or other entity controlling, controlled by, or under common control with" any guarantor under the agreement. (Caine Decl. Ex. 8, Ex. 9.) Aviation was originally intended to be a party to the Continuing Guaranty but was omitted as a signatory on the agreement. (Smith Dep. at 22:2-25.) As a result, it signed the Joinder Guaranty six days later. (Caine Dec. Ex. 9.)

The Trustee asserts that Aviation received no value for executing the Joinder Guaranty in favor of World Fuel because Airlines was insolvent when Aviation signed the Joinder Guaranty. The purpose of the Joinder Guaranty, according to the Trustee,

was to secure all payment obligations owing to World Fuel primarily from Airlines, <u>not</u> Aviation.  In the Trustee's view, the Joinder Guaranty should be avoided because Aviation did not receive any direct or indirect economic value in exchange for the Joinder Guaranty.

World Fuel responds that Aviation received both direct and indirect economic benefits from the Joinder Guaranty because Aviation, as the parent corporation of Airlines and Helicopters, benefitted from its subsidiaries' ability to purchase fuel on credit, especially in light of their outstanding debt.  In addition, Aviation and its subsidiaries shared the same line of credit from World Fuel, and Airlines occasionally repaid amounts on the line of credit due from Aviation.  In World Fuel's view, neither Airlines nor Helicopters would have been able to continue to operate without the Joinder Guaranty.  World Fuel further contends that its forbearance from taking actions against Aviation's other subsidiaries provided an additional indirect benefit to Aviation.

When a debtor incurs an obligation on behalf of a third-party, such as a guaranty, a court will generally find that the debtor received no direct benefit.  5 <u>Collier on Bankruptcy</u> ¶ 548.05(2)(b).  An exception to this rule exists when the debtor and the third party "are so related that they share 'an identity of interests.'"  <u>Tourtellot v. Huntington Nat'l Bank (In re</u>

9

Renegade Holdings, Inc.), 457 B.R. 441, 444-45 (Bankr. M.D. N.C. 2011) (citation omitted); In re Ear, Nose and Throat Surgeons, Inc., 49 B.R. 316, 320 (Bankr. D. Mass. 1985).  If they share an identity of interests, courts may presume that the debtor received an indirect benefit from incurring the obligation. Renegade Holdings, 457 B.R. at 445.  A common example is when a parent corporation makes a transfer to, or incurs an obligation on behalf of, its subsidiary.  Id.

However, if the subsidiary is insolvent at the time of the transfer, courts are reluctant to find the parent received an indirect economic benefit by guaranteeing the subsidiary's debt. Duque Rodrigues, 895 F.2d 725, 728 (11th Cir. 1990); Renegade Holdings, 457 B.R. at 444-45.

The Trustee argues that Aviation received no value for entering into the Joinder Guaranty because Airlines was insolvent at the time Aviation granted the guaranty to World Fuel.  The Trustee presents evidence that Aviation was insolvent under the Balance Sheet Test, the Adequate Capital Test, and the Cash Flow Test.  (Caine Decl. Ex. 4 at 33.)

However, under the Continuing Guarantee, Airlines' debt was jointly and severally guaranteed by both debtor and non-debtor subsidiaries of Aviation.  The Trustee does not provide any evidence that the other subsidiaries, including Helicopters and Evergreen Agricultural Enterprises, were insolvent at that time.

(Id. at 33.)  Instead, the expert report merely assigns a $0 value to these entities without stating how he came to that conclusion. (Caine Decl. Ex. 4 at 20.)  Rather than presenting evidence of Aviation's and each subsidiary's respective insolvency on an individual basis, the expert report simply concludes that the entities as a whole were insolvent.

The Continuing Guaranty made Airlines' debt the obligation of all of Aviation's subsidiaries.  Thus, when Aviation entered into the Joinder Guaranty in favor of World Fuel, all of its subsidiaries had each individually guaranteed that debt.  Therefore, the Court finds that the solvency of each subsidiary is relevant, and the Trustee failed to present evidence with respect to each.  As a result, the Court cannot grant summary judgment in favor of the Trustee on this count.

    2.   The $5.2 Million Payment

The Trustee argues that Aviation's $5.2 million payment to World Fuel is avoidable because it was paid to partially satisfy the amounts owed under the Joinder Guaranty, which it contends is avoidable.  World asserts that the $5.2 million was made pursuant to an entirely separate agreement (the Paydown and Release Agreement), in consideration for release of its liens on the aircraft.  This, according to World Fuel, allowed the consummation of the Helicopters stock sale thereby providing Aviation reasonably equivalent value.  In response, the Trustee

argues that the released collateral did nothing to improve Aviation's balance sheet since the collateral was already owned by its subsidiaries (Vintage and Holdings). Therefore, in the Trustee's view, Aviation received no value in exchange for its $5.2 million payment.

The Court concludes that the totality of the circumstances shows that Aviation received reasonably equivalent value in exchange for the $5.2 million payment to World Fuel. World Fuel released its first priority liens on the aircraft in exchange for the payment. (Caine Dec. Ex. 11 at ¶ 2.) As a result of the release of the liens, Aviation was able to pledge the aircraft to GE, thereby allowing the consummation of the $190 million Helicopters stock sale. (Smith Dep. at 80.) The "value" that Aviation received was the consummation of the $190 million sale.

Accordingly, the Court finds that the $5.2 million payment to World Fuel was for reasonably equivalent value. Therefore, the Trustee's motion for summary judgment on this count will be denied and World Fuel's motion for summary judgment will be granted.

IV. CONCLUSION

For the foregoing reasons, the Court will deny the motion of the Trustee for summary judgment and will grant in part and deny

in part the cross motion for summary judgment filed by World Fuel.

    An appropriate Order is attached.

Date: August 22, 2018        BY THE COURT:

*Mary F. Walrath*

Mary F. Walrath
United States Bankruptcy Judge